IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

**DANA L. MERRITT,**

        Plaintiff,

v.

**COMMISSIONER OF SOCIAL SECURITY,**

        Defendant.

Civ. No. 6:16-cv-00244-CL

**OPINION & ORDER**

MARK D. CLARKE, Magistrate Judge.

Plaintiff Dana L. Merritt seeks judicial review under 42 U.S.C. § 405(g) of the final decision of the Commissioner of the Social Security Administration denying her application for Disability Insurance Benefits pursuant to the Social Security Act. For the reasons below, the Commissioner's decision is REVERSED and REMANDED for immediate payment of benefits.[1]

## BACKGROUND

Plaintiff was born in 1960 and was 51 years old on April 1, 2012, when she alleges her disability began. Tr. 148. She worked for 23 years as a legal assistant and as a bookkeeper. Tr. 42, 68. Plaintiff is married, and has one adult child, for whom she is not a caretaker. Tr. 149, 185.

---

[1] The parties have consented to Magistrate Judge jurisdiction over this action pursuant to 28 U.S.C. § 636(c)(1).

Page 1 – OPINION & ORDER

In February, 2011, Plaintiff was examined by David Grunkemeier, M.D., a gastroenterologist, for complicated irritable bowel syndrome. Tr. 331. Plaintiff reported a history of 10 to 15 or possibly 20 bowel movements per day. She had a history of anal fistula, surgically treated with a fistulotomy in 2007. Dr. Grunkemeier was concerned that she had Crohn's disease, possibly complicated by superimposed functional bowel disorder, or choleretic diarrhea. Tr. 334. He ordered a colonoscopy, which was suspicious for possible colonic Crohn's disease. Tr. 336. On the same date, a CT of the small bowel revealed mid-abdominal jejunal loop with much bowel wall thickening, most consistent with inflammatory bowel disease, and some thickening of the rectosigmoid area. Tr. 330. That spring, 2011, Dr. Grunkemeier diagnosed inflammatory bowel disease, Crohn's, most likely jejunal ileitis. Tr. 327. He prescribed Entocort with a three-month taper. Tr. 329.

Two months later, Ms. Merritt reported feeling quite fatigued and having abdominal bloating. Tr. 261. She had nausea, was thirsty all the time, and had a poor appetite. *Id.* Stephanie Riccalarsen, M.D., the primary care physician, thought that her fatigue may be due to Crohn's disease, or possibly the medications she was taking to treat it. Tr. 258.

In July, 2011, Ms. Merritt was doing much better. Tr. 309. Rifaximin gave her the best relief of her day-to-day symptoms, "though duration of effect lasts only about two weeks." *Id.* Dr. Grunkemeier's treatment notes indicate that she was feeling "better than the symptoms that she had when we first diagnosed her, but [she] is still not in remission." *Id.* Dr. Grunkemeier increased the Entocort dosage and prescribed a trial of Rifaximin, one tablet every other day for prolonged effect, and also prescribed mercaptopurine. Tr. 311.

In September, 2011, Ms. Merritt was feeling better, but had occasional bloating and abdominal cramping. Tr. 254. The following week, Dr. Grunkemeier saw Ms. Merritt prior to an

endoscopy. Tr. 302. He advised that if she had active disease, he would increase therapy, but he suspected that, based on her degree of discomfort from bloating, she had visceral hypersensitivity that was probably playing a significant role in her symptoms. *Id*. She had not seen the benefit very much from Xifaxan other than reduced mucus; therefore, her perceived bloating due to visceral hypersensitivity may be greater than the actual bloating that occurs. *Id*.

In June, 2012, Ms. Merritt continued to report gas and bloating, a feeling of fullness, increased abdominal girth, and multiple food intolerances. Tr. 289. She was not able to tolerate desipramine. *Id*. Dr. Grunkemeier advised that she had very minimal disease with a degree of visceral sensitivity, as well as gas and bloating from dietary indiscretions. Tr. 291. Her fecal calprotectin was slightly elevated so he suspected that she had "a modicum of active Crohn's disease." *Id*. He increased the mercaptopurine and gave her Rifaximin samples for nine days. *Id*. If this did not improve her symptoms, they would consider Humira. *Id*.

In November, 2012, Dr. Grunkemeier suspected that Ms. Merritt had very mildly active small bowel disease, but a lot of symptoms with it which significantly impaired her quality of life. Tr. 280. In addition, Ms. Merritt was having joint pain in her knees, hips and ankles which felt like flu-like symptoms. Tr. 281. She was having one to two bowel movements a day. *Id*. Dr. Grunkemeier wrote that her Crohn's was "complicated." Tr. 282. Her symptoms seemed more functional than related to significantly active inflammatory bowel disease. *Id*. She may have only minimally active inflammatory bowel disease, but "nonetheless her quality of life was not good." *Id*. Dr. Grunkemeier offered her several options and Ms. Merritt chose to take an SSSRI to reduce some of her functional symptoms; Dr. Grunkemeier prescribed Zoloft. *Id*. In January, 2013, Ms. Merritt sought treatment for chest pain and some shortness of breath. Tr. 235. She also reported abdominal pain and bloating, cramps, nausea, diarrhea, and constipation at times. Tr.

236. She had generalized muscle aches and back pain. *Id.* Plaintiff reported that she had been under increased stress lately as her boss had retired and she no longer had a job. *Id.* She was worried that with a new job she would have to miss work because of Crohn's disease. *Id.*

In July, 2013, Dr. Grunkemeier wrote to Plaintiff's counsel that Ms. Merritt has Crohn's disease, complicated in the past by perianal fistula and small bowel ulcerations. Tr. 269. He noted that she was intolerant, due to side effects, of multiple medications used to treat the disease and continued to have symptoms that are exacerbated nearly every day, which significantly impair her quality of life. *Id.* He wrote that Crohn's disease was a "lifelong condition for which there is no cure." *Id.* Dr. Grunkemeier wrote:

> It is very likely that she will have a difficult time working an eight hour day. Even a sedentary low stress job without special accommodations, which may include frequent bathroom breaks or absences from work, which may be more than two days, due to exacerbation of flaring of her Crohn's disease. Based on the definition of being able to sustain full-time work, a clinical impression is based on Ms. Merritt's long struggle with her Crohn's disease, I do not feel she is going to be able to do so.

*Id.*

That fall, Ms. Merritt continued to have symptoms of bloating, abdominal discomfort, and occasional nausea. Tr. 406. Rifaximin continued to be effective in mitigating some of these symptoms. *Id.* Dr. Grunkemeier noted that they were unable to use any tricyclic antidepressant or an SSRI because of cognitive side effects. *Id.* He described Plaintiff's condition as "complicated Crohn's disease" with either significant advancement of her small bowel disease and/or excessive visceral hypersensitivity. Tr. 408. He recommended Humira if he could get it approved. *Id.* He also recommended a capsule endoscopy to determine that there was progressed disease in the small bowel. *Id.*

In the spring of 2014, Ms. Merritt reported bloating, abdominal pain, nausea, diarrhea and constipation. Tr. 395. She was waking in the middle of the night with urges to have a bowel movement. *Id.* Dr. Grunkemeier approved Xifaxin for nine days. Tr. 395-396. The next month, Dr. Grunkemeier approved immunomodulator monitoring for irritable bowel disease. Tr. 388. In May, 2014, Ms. Merritt reported abdominal pain and bulging to the right of her navel. Tr. 363. She had had pain off and on for a very long time, but recently she was moving some things with her father, pushing furniture around [and since then] the pain had not reduced. *Id.* Lifting or eating seem to bring it on, and worsened it. *Id.* She could feel little bulging, but her abdomen was swollen from Crohn's and was harder to feel. *Id.* She also had nausea. *Id.* Dr. Riccalarsen diagnosed an umbilical hernia, and ordered an ultrasound. Tr. 365. Steven Giss, M.D., diagnosed Ms. Merritt with an umbilical hernia, and recommended surgery. Tr. 362. Surgery was performed on May 28, 2014. Tr. 359.

Plaintiff alleges disability beginning April 1, 2012 due to Crohn's disease. On August 14, 2014, the ALJ determined she was not disabled. The Medicare Appeals Council denied review on December 11, 2015, and the ALJ's decision became the final decision of the Commissioner. Plaintiff timely filed this appeal.

## DISABILITY ANALYSIS

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r. Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011). Each step is potentially

dispositive. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The five-step sequential process asks the following series of questions:

1. Is the claimant performing "substantial gainful activity"? 20 C.F.R. §§ 404.1520(a)(4)(i); 416.920(a)(4)(i). This activity is work involving significant mental or physical duties done or intended to be done for pay or profit. 20 C.F.R. §§ 404.1510; 416.910. If the claimant is performing such work, she is not disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520(a)(4)(i); 416.920(a)(4)(i). If the claimant is not performing substantial gainful activity, the analysis proceeds to step two.

2. Is the claimant's impairment "severe" under the Commissioner's regulations? 20 C.F.R. §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii). Unless expected to result in death, an impairment is "severe" if it significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1521(a); 416.921(a). This impairment must have lasted or must be expected to last for a continuous period of at least 12 months. 20 C.F.R. §§ 404.1509; 416.909. If the claimant does not have a severe impairment, the analysis ends. 20 C.F.R. §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii). If the claimant has a severe impairment, the analysis proceeds to step three.

3. Does the claimant's severe impairment "meet or equal" one or more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii); 416.920(a)(4)(iii). If the impairment does not meet or equal one or more of the listed impairments, the analysis proceeds to the "residual functional capacity" ("RFC") assessment.

    a. The ALJ must evaluate medical and other relevant evidence to assess and determine the claimant's RFC. This is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations imposed by his or her impairments. 20 C.F.R. §§ 404.1520(e); 404.1545(b)-(c); 416.920(e); 416.945(b)-(c). After the ALJ determines the claimant's RFC, the analysis proceeds to step four.

4. Can the claimant perform his or her "past relevant work" with this RFC assessment? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv); 416.920(a)(4)(iv). If the claimant cannot perform his or her past relevant work, the analysis proceeds to step five.

> 5. Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in significant numbers in the national economy? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v); 404.1560(c); 416.960(c). If the claimant cannot perform such work, he or she is disabled. *Id.*

*See also Bustamante v. Massanari*, 262 F.3d 949, 954-55 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Id.* at 954. The Commissioner bears the burden of proof at step five. *Id.* at 953-54. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999) (internal citations omitted); *see also* 20 C.F.R. §§ 404.1566; 416.966 (describing "work which exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 954-55; *Tackett*, 180 F.3d at 1099.

## THE ALJ'S FINDINGS

Applying the five-step analysis, the ALJ found:

1. Plaintiff meets the insured status requirement through December 31, 2017. Tr. 27.
2. She did not engage in substantial gainful activity during the period since April 1, 2012, the alleged onset date. Tr. 27.
3. Plaintiff has the following severe medically determinable impairments: Crohn's disease (20 CFR § 404.1520(c)). Tr. 27.
4. Plaintiff does not have an impairment or a combination of impairments that meet or medically equal the severity of one of the listed impairments in 20 CFR Pt. 404, Subpt. P, App. 1. (20 CFR §§ 404.1520(d), 404.1525 & 404.1526). Tr. 28.

a. Plaintiff has the RFC to perform light work, defined as lifting and/or carrying up to twenty pounds occasionally and ten pounds frequently, standing and/or walking up to six hours and sitting up to six hours all within an eight hour work day with normal breaks. 20 CFR 404.1567(b). In addition, Plaintiff is limited to no exposure to hazards, such as work at unprotected heights. She also requires three additional five minute breaks throughout an eight hour workday in addition to normal breaks. Tr. 28.
5. Plaintiff is capable of performing past relevant work as a legal assistant and as a bookkeeper. 20 CFR § 404.1565. Tr. 31.

Consequently, the ALJ concluded Plaintiff was not disabled as defined by the Social Security Act. 20 CFR § 404.1520(f). Tr. 31.

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if it is based on the proper legal standards and the legal findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Batson v. Comm'r. Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "'Substantial evidence'" means "'more than a mere scintilla but less than a preponderance,'" or more clearly stated, "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Bray v. Comm'r Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). In reviewing the Commissioner's alleged errors, this Court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusions." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is rational. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

Where the evidence before the ALJ is subject to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Batson*, 359 F.3d at 1198 (citing *Andrews*, 53 F.3d at 1041). "However, a reviewing court must consider the entire record as a whole and may not

Page 8 – OPINION & ORDER

affirm simply by isolating a 'specific quantum of supporting evidence.'" *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quoting *Hammock*, 879 F.2d at 501). Additionally, a reviewing court "cannot affirm the [Commissioner's] decision on a ground that the [Administration] did not invoke in making its decision." *Stout v. Comm'r. Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006) (citations omitted). Finally, a court may not reverse an ALJ's decision on account of an error that is harmless. *Id.* at 1055-56. "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009).

Even where findings are supported by substantial evidence, "the decision should be set aside if the proper legal standards were not applied in weighing the evidence and making the decision." *Flake v. Gardner*, 399 F.2d 532, 540 (9th Cir. 1968). Under sentence four of 42 U.S.C. § 405(g), the reviewing court has the power to enter, upon the pleadings and transcript record, a judgment affirming, modifying, or reversing the decision of the Commissioner, with or without remanding the case for a rehearing.

## DISCUSSION

Plaintiff argues the ALJ erred by (1) failing to give clear and convincing reasons for rejecting Plaintiff's testimony; (2) failing to credit the opinion of Dr. Grunkemeier, an examining gastroenterologist, and (3) finding that Plaintiff retains the ability to perform her past relevant work as a legal assistant and bookkeeper. The Court agrees that the ALJ erred in all three ways.

### I. The ALJ failed to provide clear and convincing reasons to discount Plaintiff's subjective symptom testimony.

When deciding whether to accept the subjective symptom testimony of a claimant, the ALJ must perform a two-stage analysis. In the first stage, the claimant must produce objective medical evidence of one or more impairments which could reasonably be expected to produce

some degree of symptom. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007). The claimant is not required to show that the impairment could reasonably be expected to cause the severity of the symptom, but only to show that it could reasonably have caused some degree of the symptom. In the second stage of the analysis, the ALJ must assess the credibility of the claimant's testimony regarding the severity of the symptoms.[2] *Id.* The ALJ "must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony." *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001). General findings are insufficient to support an adverse credibility determination and the ALJ must rely on substantial evidence. *Id.* "[U]nless an ALJ makes a finding of malingering based on affirmative evidence thereof, he or she may only find an applicant not credible by making specific findings as to credibility and stating clear and convincing reasons for each." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006).[3]

First, the defendant cites to *Molina v. Astrue*, 674 F.3d 1104, 1113 (9th Cir. 2012), for the proposition that "the ALJ may discount a claimant's subjective complaints when an impairment was effectively controlled by medication and treatment." Def. Brief 4 (#20). This is not an accurate statement of the *Molina* court's holding. Instead, the *Molina* court held that evidence that the plaintiff failed to seek or follow proscribed treatment "can cast doubt on the sincerity of

---

[2] The Court notes that, pursuant to SSR 16–3p, the ALJ is no longer tasked with making an overarching credibility determination and instead assesses whether the claimant's subjective symptom statements are consistent with the record as a whole. *See* SSR 16–3p, available at 2016 WL 1119029 (superseding SSR 96–7p). However, the ALJ's August 2014 decision was issued nearly two years before SSR 16–3p became effective and there is no binding precedent establishing that this new ruling applies retroactively. *See Ashlock v. Colvin*, 2016 WL 3438490, *5 n. 1 (W.D. Wash. June 22, 2016) (declining to apply SSR 16–3p to an ALJ decision issued prior to the effective date); *see also Garner v. Colvin*, 626 Fed.Appx. 699, 701 (9th Cir. 2015) ("we cannot assign error to the ALJ for failing to comply with a regulation that did not exist at the time"). Therefore, SSR 16–3p is inapplicable to this case.

[3] The Commissioner suggests a more deferential standard may apply, citing *Pierce v. Underwood*, 487 U.S. 552, 565 (1987). I decline to accept the Commissioner's argument. *See Burrell v. Colvin*, 775 F.3d 1133, 1136 (9th Cir. 2014) (reasserting that the ALJ must provide "specific, clear and convincing reasons" to support a credibility analysis).

the [plaintiff's symptom] testimony," especially if there are no good reasons given for such failure. Here, Ms. Merritt did not fail to seek or follow a proscribed treatment. Instead, she actively sought treatment, and readily admitted that treatment helped improve her symptoms, although her doctor noted that she tolerated only certain medications, and the medications that were most effective lasted for a few weeks at most. Indeed, she continued to have symptoms every day, including abdominal cramping and bloating, diarrhea, nausea, constipation, and a general feeling of sickness. These symptoms are consistent with the treatment record, which indicates that Plaintiff suffered from "visceral hypersensitivity that caused significant symptoms impairing the quality of her life." Tr. 269, 408. The ALJ does not point to any evidence in the record that Plaintiff's improvement of symptoms with medication was permanent or even long-lasting.

Second, the ALJ discounted Plaintiff's symptoms because he determined that her activities were not as limiting as her subjective testimony indicated. Specifically, the ALJ noted that "she was the sole caregiver for three children as well as her elderly father." Tr. 29. The ALJ apparently gleaned this fact from one of Dr. Grunkemeier's treatment notes; however, all other evidence in the record indicates this was a typographical error on the physician's part because Ms. Merritt only has one adult child, for whom she is not a caretaker. Tr. 149, 185, 345. This factual mistake on the part of the ALJ creates a significant difference in the overall picture of Plaintiff's activities of daily living. Her other activities include being able to drive a car and being able to go shopping once or twice a week – though she states it depends on the day and whether her symptoms are flaring because if they are she will have to stay home and be close to a bathroom. Tr.186. Such activities are entirely consistent with her subjective symptom testimony, and the factual error on the part of the ALJ is sufficient for remand in and of itself.

Page 11 – OPINION & ORDER

Third, the defendant points to Plaintiff's statements regarding her ability to work even when her symptoms were at their worst in 2011, until she left her job in March, 2012. Def. Brief 6 (#20). The defendant represents that Plaintiff "left her job because her prior boss retired," and not because her symptoms got worse. *Id.* This is not a reasonable interpretation of Plaintiff's testimony. The ALJ acknowledged in the hearing that Plaintiff was able to work "full time" only due to her employer's extreme accommodation of her illness:

> Q: You're telling me the condition is the same, but before April 1st, 2012, the only reason you were working was because your employer allowed you to work even though you were not doing it full-time because they were giving you extra breaks. You were allowed to go to the breakroom, you weren't really working seven hours a day because you were getting extra breaks, that they were being understanding of your disability.

Tr. 57-58.

> Q: Were you taking more – were you absent more often than, say, one of the other legal secretaries in the office?
> A: Oh yes I was.
> Q: How many days per month are you tell me you were absent, just prior – let's say the 12 months prior to April 1st, 2012?
> A: Maybe a day a month, or I would come in late, leave early.

Tr. 59.

The fact that Plaintiff was able to work with extreme accommodations by an employer is not a reasonable way to discredit her symptom testimony.

Additionally, the ALJ states that there is evidence in the record that Plaintiff "continued to work" after April 1, 2012, but the record is clear that she did not have any substantial gainful activity after that date, and at most she currently works two to five hours per week from her own home. Tr. 52-55.

Finally, the ALJ stated that Ms. Merritt collected unemployment benefits, and therefore she "represented to the State that she could work for the purposes of obtaining unemployment benefits during the same period that she was alleging to the Social Security Administration that

Page 12 – OPINION & ORDER

she was disabled to work." Tr. 30. The ALJ found that "these contradictory assertions erode the credibility of the claims allegations of disability." *Id.* Under Oregon law, however, a person with a disability may apply for unemployment benefits so long as he or she is able to perform "some work." OAR 471-030-0036. A person may apply for, and receive, unemployment in Oregon even if they have a physical or mental impairment and are limited to part-time work. *Id.* While receipt of unemployment benefits can undermine a claimant's alleged inability to work full-time, where–as here–the record does not establish that the claimant held herself out for full time work, receipt of unemployment benefits is not a basis for the ALJ's credibility finding. *Carmickle v. Commr., Soc. Sec. Admin.*, 533 F.3d 1155, 1161-62 (9th Cir. 2008).

The Court finds that none of the ALJ's reasons for discrediting Plaintiff's symptom testimony are supported by substantial evidence.

## II. The ALJ failed to properly credit the opinion of Dr. Grunkemeier, an examining gastroenterologist.

To reject an uncontradicted opinion of a treating doctor, the ALJ must provide clear and convincing reasons, supported by substantial evidence. *Ghanim v. Colvin*, 763 F.3d 1154, 1161, 1162 (9th Cir. 2014). Even if the opinion is contradicted, an ALJ must provide specific and legitimate reasons, supported by substantial evidence. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).

The only part of Dr. Grunkemeier's opinion that the ALJ rejected is his opinion that, due to her Crohn's disease, Plaintiff is not capable of working an eight-hour day, even with special accommodations such as frequent bathroom breaks and absences from work, which might be more than two days per month. The ALJ stated that this opinion "is given little weight as it is inconsistent with [Dr. Grunkemeier's] own treatment notes. . . which document that the claimant reported improvement with her symptoms with medication and that he consistently noted that her

Page 13 – OPINION & ORDER

disease is minimal." Additionally, the ALJ found that the limitations provided "are not only vague and without definition, but they are also entirely inconsistent with the claimant's own reported ability to work full time after being diagnosed in 2011 through 2012." None of these reasons given by the ALJ are legitimate or supported by substantial evidence.

First, the fact that Ms. Merritt's symptoms improved with medication does not mean that her symptoms were resolved. Even after her symptoms improved she continued to consistently report bloating, abdominal pain, nausea, diarrhea and constipation. While the notes do indicate that in November, 2012, Dr. Grunkemeier suspected that Ms. Merritt had very mildly active small bowel disease, he confirmed that she suffered from "a lot of symptoms, which significantly impair her quality of life." Tr. 280. As late as 2013, Dr. Grunkemeier's treatment notes state that Plaintiff suffered from "complicated Crohn's disease" with either significant advancement of her small bowel disease and/or excessive visceral hypersensitivity. Tr. 408.

Second, the limitations given by Dr. Grunkemeier are not vague, nor are they inconsistent with Plaintiff's reported ability to work after being diagnosed. Dr. Grunkemeier recommended that Plaintiff would need "frequent bathroom breaks or absences from work which may be more than two days [per month] due to exacerbation or flaring of her Crohn's disease." Similarly, as discussed above, Plaintiff testified in the hearing held by the ALJ, that the only reason she was able to work "full-time" was due to her employer's accommodations, including frequent bathroom breaks, trips to the breakroom to rest, and an understanding attitude towards her absences and tardiness. Therefore, the record on this issue is quite clear, and it does not contradict Dr. Grunkemeier's opinion in any way, but instead supports it. While the ALJ is not required to credit a treating physician as to the ultimate issue of disability, *see* SSR 96-5p *and* 20 CFR 404.1527(e), his opinion that she would have difficulty working full time without

significant accommodations such as frequent bathroom breaks and excused absences and tardiness for flare-ups should be fully credited.

### III. The ALJ erred by finding that Plaintiff retains the ability to perform her past relevant work as a legal assistant and bookkeeper.

As discussed in the sections above, the ALJ erred by discrediting Plaintiff's subjective symptom testimony, and by rejecting the limitations identified by her treating physician Dr. Grunkemeier. At the ALJ hearing the Vocational Expert testified that being away from the workstation for up to an hour in a day, as Plaintiff often was in her previous job, would prevent an employee from passing the probationary period in a new job, even if she were highly skilled. Tr. 71. Being absent or tardy would eliminate all work. Tr. 72. Because the record is clear and it is undisputed that Plaintiff would need significant accommodations for breaks, absences, and tardiness, the defendant has not met its burden to show that Plaintiff is capable of working an eight-hour day with reasonable accommodations.

### REMAND

A district court may "revers[e] the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing," *Treichler v. Comm'r of Soc., Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir.2014) (citing 42 U.S.C. § 405(g)) (alteration in original), but "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation," *id.* (quoting *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 744, 105 S.Ct. 1598, 84 L.Ed.2d 643 (1985)). Ninth Circuit case law precludes a district court from remanding a case for an award of benefits unless certain prerequisites are met. *Burrell v. Colvin*, 775 F.3d 1133, 1141 (9th Cir.2014) (discussing *Garrison v. Colvin*, 759 F.3d 995 (9th Cir.2014)). The district court must first determine that the ALJ made a legal error, such as failing to provide legally sufficient reasons for rejecting evidence. *Id.* If the court finds such an error, it

must next review the record as a whole and determine whether it is fully developed, is free from conflicts and ambiguities, and "all essential factual issues have been resolved." *Treichler,* 775 F.3d at 1101. In conducting this review, the district court must consider whether there are "inconsistencies between [the claimant's] testimony and the medical evidence in the record," *id.* at 1105, or whether the government has pointed to evidence in the record "that the ALJ overlooked" and explained "how that evidence casts into serious doubt" the claimant's claim to be disabled, *Burrell,* 775 F.3d at 1141. Unless the district court concludes that further administrative proceedings would serve no useful purpose, it may not remand with a direction to provide benefits. *Id.; Dominguez v. Colvin,* 808 F.3d 403, 407 (9th Cir. 2015), *as amended* (Feb. 5, 2016).

On this record, the Court believes no useful purpose would be served by remanding the case for further proceedings. As discussed fully above, the Court is properly convinced that the ALJ failed to provide substantial evidence to support his decision discrediting Plaintiff's subjective symptom testimony and rejecting Dr. Grunkemeier's uncontradicted medical opinion.

Moreover, despite the Commissioner's arguments to the contrary, the record is fully developed and no meaningful purpose would be served by remanding for additional proceedings. Indeed, accepting as true Dr. Grunkemeier's medical opinion that Plaintiff would need significant accommodations including several bathrooms breaks, and Plaintiff's testimony that when she did work, she took numerous breaks during the day and only worked about seven hours per day, if not less, the Commissioner's own vocational expert testified that being away from the workstation for up to an hour in addition to normal breaks would prevent Plaintiff from passing a probationary period at a new job, even if the work was highly skilled. This would eliminate her ability to perform past work and also any alternative work. Similarly, Dr. Grunkemeier opined

Page 16 – OPINION & ORDER

that she would need to be absent at least twice, and to arrive late or leave early at least twice; the VE testified that such "absenteeism and/or tardiness and/or leaving early," standing alone, also would eliminate past work and any other employment.

A claimant who is unable to perform past relevant work as well as any other work that exists in significant numbers in the national economy, after taking into account the claimant's RFC and age, education, and work experience, is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv); 416.920(a)(4)(iv); 404.1520(a)(4)(v); 416.920(a)(4)(v); 404.1560(c); 416.960(c). Plaintiff meets these criteria, is therefore disabled, and remanding this case for further administrative proceedings would serve no useful purpose; "rather, it would merely delay the award of benefits." *Dominguez*, 808 F.3d at 407.

Thus, the Commissioner's decision is reversed and remanded for the payment of benefits.

## ORDER

Based on the foregoing, and pursuant to sentence four of 42 U.S.C. § 405(g), the decision of the Commissioner is REVERSED and the matter is REMANDED for immediate payment of benefits.

IT IS SO ORDERED.

DATED this 12 day of October, 2017.

MARK D. CLARKE
United States Magistrate Judge